EXCHANGE BANK v. HUBBARD et al. ·

(Circuit Court, S. D. New York. October 25, 1892.)

NEGOTIABLE INSTRUMENTS—DRAFTS—PROMISE TO ACCEPT.
Defendants, in order to enable a certain firm to buy cotton for them, promised the firm that they would cash such sight drafts as the firm should procure a certain bank to cash. The firm communicated this promise to the bank, which accordingly cashed the drafts, but defendants refused to pay them. *Held*, that defendants were liable to the bank precisely as if they themselves had directed the bank to cash the drafts.

At Law. Action by the Exchange Bank against Samuel T. Hubbard and others to recover money. On demurrer to the complaint. Demurrer overruled.

John R. Abney, for plaintiff.
Sullivan & Cromwell, for defendants.

WALLACE, Circuit Judge. This is a demurrer to a complaint in an action at law. The complaint proceeds upon the theory that the defendants are liable to the plaintiff for the amount of certain bills of exchange, as upon the breach of an agreement to accept and pay the bills. The complaint can be fairly read as stating that, to enable Hope & Co. to raise the money to buy 300 bales of cotton and ship it to the defendants, the latter promised Hope & Co. to accept and pay such drafts as Hope & Co. should procure the plaintiff to cash, the drafts to be drawn on defendants, and made payable on presentment at the city of New York; that the plaintiff, in reliance upon the promise of the defendants to Hope & Co., of which plaintiff had been informed by Hope & Co., as well as upon a telegram sent by defendants to Hope & Co., cashed the drafts in suit; that Hope & Co. used the proceeds to buy the cotton; that Hope & Co. shipped the cotton to defendants, and the defendants received it; and that the defendants neglected and refused to accept and pay the drafts upon proper presentment and demand.

The plaintiff's right of action does not depend upon the telegram sent by the defendants to Hope & Co. Its position is no better and no worse than if that telegram had not been sent, except to the extent that the message constituted a definite authorization to Hope & Co. as to the quantity of cotton to be purchased, the price to be paid, the mode of shipment, and some other details which need not be referred to. Read in the light of what had previously taken place between Hope & Co. and the defendants, the telegram contains a statement which may possibly be construed as authorizing the former to draw on defendants for the price to be paid to Hope & Co. for the cotton; but, standing alone, it does not purport to authorize Hope & Co. to procure the money from the plaintiff, or anybody else, upon the credit of defendants, and, if the statute of frauds were in the case, would have no effect as a promise in writing of the defendants to be answerable to the plaintiff for the debt of Hope & Co.

Upon the facts stated, it is claimed that the defendants authorized Hope & Co. to procure the money with which to buy the cotton from the plaintiff on such drafts as are set forth in the complaint. Defendants are therefore liable as principals for the contract of their agent, made within the terms of the authority conferred. If they had authorized Hope & Co. to borrow money for them, or on their credit, from the plaintiff, without regard to the form of the security to be given, they would have been liable as for money had and received for their use. Having authorized Hope & Co. to procure it upon sight drafts, they are liable precisely as though they had themselves directed the plaintiff to cash drafts drawn on them by Hope & Co. The demurrer is overruled.