BANKERS' SURETY CO. v. TOWN OF HOLLY.†

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 4085.

1. PROCESS ⚖️158—MOTION TO QUASH SERVICE—SPECIFICATION OF DEFECTS.

A motion to quash the service of summons for the reason that it was not valid nor authorized might properly have been overruled on the ground that it presented nothing upon which the trial court could rule, as such a motion must definitely point out the defects in the service, and nothing beyond the scope of the motion will be considered.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 218–220; Dec. Dig. ⚖️158.]

2. APPEAL AND ERROR ⚖️677—REVIEW—MATTERS NOT RULED ON BELOW.

Where a motion to quash the service of the summons was insufficient to present anything upon which the trial court could rule, and the record did not show that it was not overruled on this ground, there was nothing for the Circuit Court of Appeals to review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2877; Dec. Dig. ⚖️677.]

3. INSURANCE ⚖️627—FOREIGN CORPORATIONS—SERVICE OF PROCESS—TECHNICAL DEFECTS.

In an action against a foreign surety company, an objection to the service of the summons because made upon the deputy commissioner of insurance, instead of the commissioner, appointed by defendant as its attorney upon whom service might be made, pursuant to statute, was very technical, and did not appeal favorably to a court of justice, where defendant had received the summons and complaint.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1573, 1574; Dec. Dig. ⚖️627.]

4. INSURANCE ⚖️627—FOREIGN CORPORATIONS—SERVICE OF PROCESS—STATUTORY PROVISIONS.

Under Laws Colo. 1907, p. 447, § 22, requiring foreign insurance companies, before transacting business in the state, to appoint the commis-

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied March 31, 1915.

sioner of insurance their attorney upon whom process may be served, and to stipulate that such authority shall continue in force so long as any liability remains outstanding against the company in the state, where a foreign surety company, after filing a power of attorney irrevocably consenting that process might be served upon the commissioner, withdrew from the state, and its withdrawal was accepted by the commissioner of insurance, but it never attempted to revoke such irrevocable consent, and it thereafter executed outside the state a bond to secure performance of a contract with a town in Colorado, which the contractor delivered to the town within the state, the execution and delivery of such bond was a transaction of business in the state, and authorized the service of process in a suit thereon upon the commissioner of insurance, as the bond did not become legally binding until accepted by the town.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1573, 1574; Dec. Dig. ☞627.]

5. INSURANCE ☞627 — FOREIGN CORPORATION — SERVICE OF PROCESS — ESTOPPEL.

Where a foreign surety company, which executed an appointment of the commissioner of insurance as its attorney upon whom process might be served in consideration of the privilege of doing business in a state, after withdrawing from the state executed a bond to secure the performance of a contract, attached to and made a part of the bond, and providing that a bond should be given by a surety company regularly incorporated and authorized to operate in the state, the surety company was estopped to deny that it was authorized to do business in the state and was doing business therein, so as to authorize the service of process upon the commissioner of insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1573, 1574; Dec. Dig. ☞627.]

6. PLEADING ☞236—AMENDMENT—DISCRETION OF TRIAL COURT.

The allowance of amendments to the complaint is a matter within the discretion of the trial court.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 601, 605; Dec. Dig. ☞236.]

7. LIMITATION OF ACTIONS ☞127—AMENDMENT OF PLEADINGS.

A provision in a contractor's bond that suits brought thereon must be instituted within six months after the breach of the contract did not prevent the amendment of the complaint in an action thereon after the six months had expired, where the amendment stated no new cause of action.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. ☞127.]

8. APPEAL AND ERROR ☞173—REVIEW—MATTERS NOT RAISED BELOW.

In an action on a contractor's bond, where the point that no notice was given to the surety of any act on the part of the contractor involving a loss for which it would be responsible immediately after the occurrence of the act was neither pleaded nor otherwise presented to the trial court, it could not be considered by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. ☞173.]

In Error to the District Court of the United States for the District of Colorado; John A. Riner, Judge.

Action by the Town of Holly against the Bankers' Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. E. Clark, of Denver, Colo., for plaintiff in error.

John H. Fry, of Denver, Colo. (Pershing & Titsworth and Caldwell Martin, all of Denver, Colo., on the brief), for defendant in error.

---

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOU-MANS, District Judges.

CARLAND, Circuit Judge. The town of Holly, Colo., brought suit against the Bankers' Surety Company, an Ohio corporation, and recovered a judgment therein in the sum of $10,000 upon a bond executed and delivered to the town November 15, 1909, to secure the faithful performance of a contract made and entered into between the town and the W. K. Palmer Company, engineers, July 24, 1909, covering certain engineering work in connection with the installation of a sewer system for said town. The surety company claims that the trial court never obtained jurisdiction over it to render such judgment, for the reason that the summons and complaint issued in said action was never served upon it.

We will first consider the record for the purpose of ascertaining what the surety company did in the trial court in the way of raising the question of jurisdiction. The action was commenced in the district court of Prowers county, Colo., September 30, 1910. October 27, 1910, the surety company filed the following motion in the state court:

"Comes now the defendant, the Bankers' Surety Company, by W. E. Clark, its attorney, and appearing especially for the purpose of this motion, and for no other purpose, moves the court to quash the service of the summons herein, for the reason that said defendant is not doing, nor is it authorized to do, any business within the state of Colorado, nor has it been at any time during the year A. D. 1910.          W. E. Clark,
"Attorney for Defendant, the Bankers' Surety Company."

This motion was never ruled upon, and need not be further considered. November 16, 1910, the cause was removed by the surety company to the United States Circuit Court for the District of Colorado. August 28, 1911, counsel for the surety company filed in the Circuit Court the following motion:

"Comes now the defendant, The Bankers' Surety Company, by W. E. Clark, its attorney, and appearing specially for the purpose of this motion and for no other purpose, moves the court to quash the service of summons herein for the reason that the same is not valid nor authorized.
"W. E. Clark,
"Attorney for the Defendant, the Bankers' Surety Company."

November 17, 1911, this motion was denied and the surety company ordered to either demur within 10 or answer within 20 days. November 27, 1911, the surety company under protest filed a general demurrer to the complaint. December 21, 1911, the demurrer was overruled, and the surety company ordered to answer within 15 days. January 13, 1912, the surety company answered under protest. The answer alleged that the surety company had done no business in Colorado since October 23, 1909, and set forth the correspondence had between the surety company and the commissioner of insurance of Colorado, which it was claimed had the effect of excluding the surety company from the state on the date mentioned.

When the case came on for hearing February 12, 1913, 2 years and 4 months after its commencement, counsel for the surety company read a formal protest against being compelled to go to trial, first, because

the summons and complaint was served upon the deputy commissioner of insurance, instead of the commissioner himself; second, because the surety company had withdrawn from doing business in the state of Colorado prior to the execution of the bond in suit. The protest was overruled and exception allowed. The town of Holly introduced its evidence in support of the complaint, the surety company taking no part in the trial of the merits, but at the close of the plaintiff's evidence introduced evidence which showed that the commissioner of insurance of Colorado accepted the withdrawal of the surety company from that state October 23, 1909; that A. W. Grant, deputy commissioner of insurance received a copy of the summons issued in the action September 30, 1910, and on the same day mailed said copy, together with a copy of the complaint in the action, also served upon him, to the Bankers' Surety Company, Cleveland, Ohio; and that the surety company acknowledged the receipt of the letter. Counsel for the surety company then moved to dismiss the action for want of jurisdiction. The motion was overruled and exception allowed.

The contract to secure the performance of which the bond was given contained this language:

"The company shall give a bond, acceptable to the town, running to the town of Holly, Colorado, in the sum of ten thousand dollars ($10,000.00), for the faithful performance of this agreement, and guaranteeing that the sewer systems when completed shall be practical, efficient sewer systems in every respect. Said bond to be given by a surety company regularly incorporated, and authorized to operate in Colorado."

The bond itself contained the following recital:

"Whereas, said principals have entered into a certain written contract, a copy of which is hereto attached and made a part hereof, bearing date the 24th day of July, 1909, covering certain engineering work in connection with the installation of a sewer system in the town of Holly, Colorado, and supervising the work of construction."

Palmer, of the W. K. Palmer Company, delivered the bond to the town of Holly, and it was accepted by said town. The proof of service of the summons and complaint was as follows:

"State of Colorado, City and County of Denver—ss.:

"Myles P. Tallmadge, being first duly sworn, deposes and says that he is over the age of twenty-one years and is not interested in or a party to the within entitled action; that he received the within summons, together with a copy of the complaint in the within stated action, on the 30th day of September, A. D. 1910, and personally served the same upon William L. Clayton, commissioner of insurance of the state of Colorado, by leaving with Alexander W. Grant, deputy commissioner of insurance of said state, and chief clerk of said commissioner of insurance, personally, in the office of said commissioner of insurance in the capitol building of said state of Colorado, between the hours of three and four o'clock in the afternoon of said last-mentioned day, a true copy of the within summons, together with a copy of the complaint in the action therein mentioned, thereto attached; and deponent further says that he knows the person served as aforesaid to be the duly authorized agent of the Bankers' Surety Company, a corporation of the state of Ohio, for the purpose of service of process on said surety company, the person mentioned and described in said summons as one of the defendants in the action therein mentioned.          Myles P. Tallmadge.

"Subscribed and sworn before me this 30th day of September, A. D. 1910. My commission expires February 26, A. D. 1913.

"[Seal.]                          Alexander C. Hitzler, Notary Public."

Section 22, Session Laws of Colorado of 1907, page 447, reads as follows:

"Sec. 22. (Appointing Commissioner—Attorney.) No foreign insurance company shall, directly or indirectly, issue policies, take risks or transact business in this state, until it shall have first appointed, in writing, the commissioner of insurance to be the true and lawful attorney of such company in and for this state, upon whom all lawful processes in any action or proceeding against the company may be served with the same effect as if the company existed in this state. Said power of attorney shall stipulate and agree, upon the part of the company, that any lawful process against the company which is served on said attorney shall be of the same legal force and validity as if served on the company, and that the authority shall continue in force so long as any liability remains outstanding against the company in this state. A certificate of such appointment, duly certified and authenticated, shall be filed in the office of the commissioner, and copies certified by him shall be deemed sufficient evidence, and service upon such attorney shall be deemed sufficient service upon the principal."

The appointment by the surety company of the superintendent of insurance of the state of Colorado as a person upon whom service of process in suits against it might be served, reads as follows:

"Know all men by these presents, that the Bankers' Surety Company, a corporation created by and organized under the laws of the state of Ohio, and thereby authorized to transact the business of fidelity and guaranty insurance, desiring to transact such business within the state of Colorado, pursuant to the laws thereof, does by these presents irrevocably consent that actions may be commenced against said company in the proper court of any county in the state of Colorado in which the cause of action shall arise, or in which the plaintiff may reside, by service of process upon the superintendent of insurance of the state of Colorado; and the said the Bankers' Surety Company does hereby, in consideration of the privilege of doing business in the state of Colorado as aforesaid, stipulate and agree that such service of process shall be taken and held in all courts to be as valid and binding as if due service had been made upon said company according to the laws of said state of Colorado, or of any other state. And that the authority shall continue so long as any liability remains outstanding against the company in the state of Colorado.

"In witness whereof, the said company, in accordance with a resolution of its board of directors, duly adopted by said board on the eleventh day of July, A. D. 1902 (a certified copy whereof is hereto attached), hath to these presents affixed its corporate seal and caused the same to be subscribed and attested by the president and secretary, at the city of Cleveland, in the state of Ohio, on the eleventh day of July, 1902.

"Harvey D. Goulder, President."

[1, 2] The motion to quash the service of the summons made in the federal court presented nothing upon which the trial court could rule. It was equivalent to a motion to quash the service for the reason that the service was not good. The trial court would have been fully justified in overruling it for this reason, and nothing appears in the record to show that it did not do so. As the record presents no question upon which the trial court ruled, there is no question for this court to review. Board of Com'rs v. Sutliff, 97 Fed. 270, 38 C. C. A. 167; Railway Co. v. Henson, 7 C. C. A. 349, 351, 58 Fed. 530, 532; Philip Schneider Brewing Co. v. American Ice Mach. Co., 23 C. C. A. 89, 100, 77 Fed. 138, 149; Manufacturing Co. v. Joyce, 4 C. C. A. 368, 370, 54 Fed. 332, 333.

A motion to quash the service of process must distinctly point out the defects in the service, and nothing beyond the scope of the motion will be considered. Cheney v. Chicago City Nat. Bank, 77 Ill. 562; Smith v. Delane, 74 Neb. 594, 104 N. W. 1054; Bucklin v. Strickler, 32 Neb. 602, 49 N. W. 371; Brown v. Goodyear, 29 Neb. 376, 45 N. W. 618; Freeman v. Burks 16 Neb. 328, 20 N. W. 207; Smelt v. Knapp, 16 Neb. 53, 20 N. W. 20; Perkins v. Mead, 22 How. Prac. (N. Y.) 476; Thibault v. Connecticut Valley Lumber Co., 80 Vt. 333, 67 Atl. 819; Barrows v. McGowan, 39 Vt. 238.

[3-5] The point that the service of the summons was bad because made upon the deputy commissioner of insurance, was first made in a so-called protest read when the case was called for trial about 2 years and 4 months after its commencement. As the surety company received the summons and complaint the objection appears to be very technical, and does not appeal favorably to a court of justice. It is doubtful whether having made a motion to quash the service of the summons without specifying therein the defects in the service, the surety company could again be heard to question such service. But, laying this proposition aside, we come to consider whether the evidence introduced at the trial by the surety company shows that it was not doing business in Colorado on September 30, 1910, the date of the service of the summons, or had not done business in Colorado with reference to the subject-matter of the litigation prior to the date of said service. It is true that the withdrawal of the surety company from the state of Colorado was accepted by the commissioner of insurance on October 23, 1909, but it also appears that it never attempted to revoke its irrevocable consent that actions might be commenced against said company in the proper court of any county in the state of Colorado in which a cause of action should arise or in which the plaintiff might reside by service of process upon the superintendent of insurance. The bond in question was executed by the surety company at Kansas City, Mo., and delivered by the principal obligor to the town of Holly in Colorado, and did not become legally binding until it had been so accepted by said town of Holly, and the contract, which was attached to the bond and made a part thereof, provided that the bond should be given by a surety company regularly incorporated and authorized to operate in Colorado.

We are of the opinion that the execution and delivery of the bond in question to the town of Holly, in Colorado, for the purpose of securing the faithful performance of a contract to be performed in Colorado, was a transaction of business in Colorado, and authorized the service of process in a suit brought upon the bond upon the commissioner of insurance. We are further of the opinion that, the bond having been executed, delivered, and accepted with full knowledge of the language of the contract, which required said bond to be signed by a surety company regularly incorporated and authorized to operate in Colorado, the surety company is estopped from asserting that it was not doing business in said state. The execution and delivery of the bond, with the contract attached thereto and made a part thereof, was a representation to the town of Holly that the surety com-

pany was authorized to do business in Colorado and was doing business therein. Having executed and delivered the bond under that representation, it may not now, when sued upon the bond, allege that it was not authorized to do business in Colorado at the time it executed and delivered the bond. That the execution and delivery of the bond to secure the performance of the contract in question was the transaction of business in Colorado is supported by the following authorities: Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Mutual Reserve Fund Life Ass'n v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; Equitable Life Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; Mutual Life Insurance Co. of New York v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782. Upon the question of estoppel the following cases may be cited: Ehrman v. Teutonia Insurance Co. (D. C.) 1 Fed. 471; Phœnix Ins. Co. v. Pennsylvania R. R. Co., 134 Ind. 215, 33 N. E. 970, 20 L. R. A. 405, and cases cited; Sparks v. National Masonic Acc. Assn. (C. C.) 73 Fed. 277; Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451; Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Railroad Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354; Foster v. Charles Betcher Lumber Co., 5 S. D. 57, 58 N. W. 9, 23 L. R. A. 490, 49 Am. St. Rep. 859; Barricklow v. Stewart, Executor, 31 Ind. App. 446, 450, 68 N. E. 316; Berry et al. v. Knights Templars' & Masons' Life Indemnity Co. (C. C.) 46 Fed. 439, 440; Sparks v. Accident Association, 100 Iowa, 458, 69 N. W. 678; John Deere Plow Co. v. Wyland et al., 69 Kan. 255, 76 Pac. 863, 2 Ann. Cas. 304, and John Deere Plow Co. v. Spatz, 69 Kan. 255, 76 Pac. 863; Stewart v. Harmon et al. (C. C.) 98 Fed. 190, 191; Diamond Plate Glass Co. v. Minneapolis Mut. Fire Ins. Co. (C. C.) 55 Fed. 27, 29; Minneapolis Fire & Marine Ins. Co. et al. v. Norman, 74 Ark. 190, 85 S. W. 229, 230, 109 Am. St. Rep. 74, 4 Ann. Cas. 1045.

We have examined Hunter v. Mutual Reserve Fund Life Ass'n, 218 U. S. 573, 31 Sup. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686; Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916; Territory of New Mexico ex rel. Caledonian Coal Co. v. Baker, 196 U. S. 432, 25 Sup. Ct. 375, 49 L. Ed. 540; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Mutual Reserve Fund Life Ass'n v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; Cooper Mfg. Co. v. Ferguson & Harrison, Partners, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137—cited by counsel for the surety company, and find that they are clearly distinguishable from the case at bar in their facts, and in principle sustain the position here taken. None of the cases cited by counsel present a case where a citizen or municipal corporation of a state with whom a foreign corporation has transacted business is seeking to enforce a liability under such a state of facts as presented by this record. We conclude that the trial court, upon the record before it, had jurisdiction to proceed and adjudicate the rights of the parties.

[6] It is assigned as error that the court erred in allowing the

plaintiff below to amend its complaint. No exception was taken to the order allowing the amendment, and there was no error in making the order, as it was a matter within the discretion of the trial court, which was wisely exercised.

[7] The bond provided that suits at law or proceedings in equity brought on the bond to recover any claim thereunder, must be instituted within six months after the breach of the contract. It is claimed that at the time the complaint was amended, the six months had expired, but the amendment stated no new cause of action, and the point is without merit; furthermore the point was never presented to the trial court in any way.

[8] There was no error in overruling the demurrer to the amended complaint as it stated a good cause of action. The point that no notice was given to the surety company of any act on the part of its principal in the bond which would involve a loss for which the surety company would be responsible immediately after the occurrence of such act was neither pleaded by the surety company nor otherwise presented to the trial court, and therefore cannot now be considered. The point that the evidence did not support the verdict was in no way presented to the trial court.

It results from what has been said that the judgment below must be affirmed.

And it is so ordered.