KEITH HICKMAN, INDIVIDUALLY AND AS TRUSTEE OF THE BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, INTERNATIONAL ASSOCIATION, AN UNINCORPORATED ASSOCIATION, APPELLANT, *v.* JOHN O. KLINE, T. R. GEBHARDT, FRANK WESTLEY, THOMAS OTIS, A. W. SCHUSTER, R. L. ATKINSON, EVERETT H. DWIGHT, GEORGE SAXTON, E. M. TIPTON, ORMAN JONES, MEYER HEGGEN, E. C. ROCKEFELLER, EDDIE ROCK, E. BOLLING, W. C. STEELE, VIC BLOOM, ELVIN SHOEMAKER, JOHN BAILS, JOHN E. CUNNINGHAM, E. R. CHENOWITH, F. SMITH, JAMES LEE, THOS. WASHINGTON, G. N. THOMPSON, J. B. FISHER, H. H. SCHULTZ, JAMES KING AND FRED BLOOM, INDIVIDUALLY AND AS MEMBERS OF THE BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, LOCAL NO. 159, ON BEHALF OF THEMSELVES AND ALL OTHER PERSONS SIMILARLY SITUATED, RESPONDENTS.

No. 3814

February 2, 1955.                    279 P.2d 662.

*Morse & Graves,* of Las Vegas; *Alexander H. Schullman,* of Los Angeles, California, for Appellant.

*Bonner and Rittenhouse,* of Las Vegas, for Respondents.

## OPINION

By the Court, MERRILL, C. J.:

This action challenges the propriety of a trusteeship imposed by an international labor union upon its Las Vegas local and is brought by members of the local to

compel the union to restore control to the local. Judgment of the trial court was in favor of the local to the effect "that the defendants, The Brotherhood of Painters, Decorators and Paperhangers of America, International Association, its officers, responsible agents and servants restore to Local 159 of said Brotherhood control of its organization and each and everything of which the Local was deprived as a result of the special trusteeship including all property and property rights of the Local." The trustee, Keith Hickman, has taken this appeal individually and as trustee. In our view the judgment was proper and should be affirmed.

The trusteeship was imposed pursuant to authority of section 47 of the constitution of the union. Section 47(a) reads as follows: "Whenever the affairs of a Local Union are improperly conducted, or the officers thereof are neglectful, dishonest or incompetent, or the membership is indifferent to the management of the Local Union, and the rights and interests of the members of the Local Union are likely to be placed in jeopardy, the General President, with the approval of the General Executive Board, may appoint a Special Trustee to take immediate charge and control of the Local Union and its affairs."

Section 47(g) reads as follows: "Upon the appointment of a special Trustee, as provided in this section, the General President shall notify the officers of the Local Union that he will hold a hearing, at which interested parties may be heard on the subject of continuing the Special Trusteeship. The notice may be given by the General President by telegram, ordinary mail, registered mail or long distance telephone. The General President shall fix the time and place of the holding of said hearing, which shall be within ten (10) days of the appointment of a Special Trustee. If, upon such hearing, the General President is of the opinion that the affairs of the Local Union should continue under trusteeship, he shall make such decision and, thereupon, the Trustee

shall continue to act in accordance with his powers as defined in this section. If, upon such hearing, the General President is satisfied that the management of the affairs of the Local Union do not require the continuance of the Special Trusteeship, he shall so decide and the Local Union and its officers shall revert to their former status and continue to operate without trusteeship."

By section 47 (f) the maximum term of the trusteeship is fixed at two years.

The intent and purpose of these subsections, read in context, are clear. The president is authorized, ex parte, to impose a temporary trusteeship without notice or hearing when, in his determination, any of the conditions specified in section 47 (a) exist and the affairs of the local appear to him to demand such protective action. However, within ten days of such action a hearing must be had upon notice in order that the justification for the trusteeship may be considered by all interested parties. Action of the president on the basis of such a hearing amounts to a determination on the merits of all questions relating to the need or justification for the trusteeship.

Our first question is whether, under section 47, the trusteeship was properly imposed upon the local.

On June 2, 1953 by telegram the general president of the union notified the local of his appointment of Hickman as special trustee. In this notice he based his action upon the fact that "the general executive board has received the report of improper conduct of the affairs of Local Union 159." The nature of the improper conduct was not specified.

Testifying at the trial in the court below the general president stated that his action had been based upon information received by him which had convinced him that in many respects the rights and interests of the members of the local were likely to be placed in jeopardy. His concern was based in large part upon conduct of James King, business agent of the local. On March 24,

1953 and May 25, 1953 special meetings had been held of what was known as the Painters and Decorators Joint Committee, consisting of representatives of both labor and management in the local industry and organized pursuant to collective bargaining agreement. At those meetings charges of improper conduct on the part of King were made and statements in support of them were received. Transcripts of these proceedings were sent to the general president. In the court below he testified that having read the transcripts he was thoroughly convinced that an emergency existed. He also testified that his action was based upon information that the local was guilty of discrimination in rates of pay charged to employers and of violations of the Wage Stabilization Act of 1952, 50 U.S.C.A. Appendix, sec. 2101 et seq.; that "a general chaotic condition" existed in the local; that members were afraid to appear at meetings and were under the domination of King. Certainly these are matters which no responsible union executive could properly ignore under section 47.

On June 10, 1953, after notice, a hearing was had in Las Vegas. The notice was simply an announcement to the general effect that a hearing pursuant to section 47(g) would be had on the subject of the continuance of the trusteeship. No notice was given as to the facts or information on the basis of which the president had acted. The proceedings were reported and transcribed. A study of the transcript discloses that the hearing was well attended by members of the local. No evidence was presented on behalf of the international union of any of the matters which had been brought to the attention of the general president. Furthermore, never once during the course of the hearing was a disclosure made as to the factual basis for the trusteeship. The members were left to guess at the reasons for the president's action and, without guidance of any character, to attempt to meet and refute the implication that the affairs of the local justified such action.

Constantly throughout the proceedings the members'

rebellion at this procedure manifested itself. In this respect the transcript constitutes as powerful prose in proof of the American instinct for democratic due process as one is likely often to read.

Presiding at the hearing was James Blackburn, international representative. In opening the hearing, section 47(g) was read by him as explanation for the calling of the hearing and to indicate the nature of the proceeding. He concluded his opening remarks thus: "At this time, as per section (g), if there is anyone who now wishes to protest or have anything to say regarding the trusteeship or against the trusteeship, the floor is yours one at a time, and let's have order."

In the course of the proceeding we then find the following remarks and exchanges:

Bro. Thompson: "I would like to ask you, Brother Blackburn, a question. Will you tell us why our charter has been taken away from us? Meeting after meeting we have asked our delegates to the Joint Committee to give us a briefing of what has taken place. Brother Fenton gets up and said it hasn't been made out. We know more about the meeting than he does when he was right there. Brother Hickman gets up and says that he don't know. * * *"

Blackburn: "I am here as a hearing officer, not as an interrogator. I am the direct agent of L. M. Raftery, General President, with authority from him to act as hearing officer. If Brother Fenton or Brother Hickman wish to answer you, they may do so at this time."

Bro. Fenton: "I happen to be one of the men that the man referred to and I'm sworn to secrecy on those matters. * * *"

  *  *  *  *  *  *  *

Bro. Anderson: "I would like to find out if there isn't some procedure—isn't there something, some way of moving Mr. King from his position and let us, as a body, run our own affairs instead of having one director?"

Blackburn: "You've read the constitution?"

Anderson: "Yes."

Blackburn: "Then you can answer your own question. There's no charges against Mr. King to my knowledge."

Thompson: "Now I'm gonna get down to this thing. I still want to know why the International is here. * * *".

\* \* \* \* \* \* \*

Blackburn: "\* \* \* Any and all questions directed at me regarding the trusteeship I must refer to the general president to answer further."

Thompson: "Who filed charges so that this organization could be taken over?"

Blackburn: "There have been no charges filed against it as far as I know."

Thompson: "I want to know why."

Blackburn: "I refer you to section 47 of the constitution. Read it."

Thompson: "I've read it. Maybe as many times as you have. Why did they take it over?"

Blackburn: "Get in touch with the general president."

Thompson: "What are you here for?"

Blackburn: "I'm here representing the general president to see that this hearing is properly held and that he gets proper information. Is that clear?"

Thompson: "You're the organizer here. If we ask you for information you should give it to us, shouldn't you?"

Blackburn: "I haven't any information any more than you have."

Unidentified member: "Do you know why the local was taken over?"

Blackburn: "Under section 47, whenever the affairs of a Local Union are improperly conducted—"

Member: "Don't you know? In whose opinion have they been improperly conducted?"

Blackburn: "Evidently the opinion of the general president."

Member: "If there have been no charges filed why has he taken over?"

Blackburn: "If I don't have order I will adjourn this meeting. I hope that sinks in. In due deference to this union I want a proper hearing. I don't want any cat calling, booing or anything else."

  *  *  *  *  *  *  *

Bro. Dwight: "I would like to put a question to the members here, Local 159, the membership. I would like to ask this local to stand up and see who all is in favor of continued trusteeship of our local."

Blackburn: "That's out of order."

Bro. West: "It's a question. It's pertaining to this. We're asking to get out of trusteeship. Our brotherhood would want to know whether this local down here wanted a trusteeship without any reasons."

Blackburn: "We're not going to take that up. That will be settled by the general president. We're not going to put anybody on a spot in this hearing. * * * You have a constitution which serves as avenues and means for appeals and everything else. If you'll read your constitution all these things you're asking are answered."

Bro. Ladd: "I was one of the joint committee and I yet don't know why it was turned over to the International. Furthermore, there was never brought up in the local whatever happened down to the joint committee meeting. The membership don't know."

Blackburn: "I will inform the membership now that in the office there is a transcript of that particular thing that everybody can read. You're all at liberty to come up and read it."

Ladd: "The whole detail never was brought up there until this come up. Why wasn't it read at a meeting?"

Blackburn: "Anyone else?"

Thompson: "I would like to read the first paragraph of that section 47. [Reads section 47(a).] We still don't see a reason and the reason has not been told to us why the local went into trusteeship. Doesn't somebody have to prefer charges against an officer if he's been neglectful, dishonest or incompetent? Nobody has been found guilty. Brother King has been involved in something.

He still hasn't been found guilty. You said just now that there are no charges against him so how can you come in and take a local over just because 47 says so. It don't say so. None of these things are true, not one of them."

Blackburn: "I want to remind you and everybody else you can't take part of a sentence out of anything until you read the complete entire matter. Paragraph (a) reads: [Reads.] If you'll read paragraph (g) you're having a hearing. If, in the opinion of the general president, after he gets this data, he deems this union able to handle its own affairs it will not have a trusteeship. If he deems that it doesn't, the trusteeship will be continued."

Thompson: "Why go over to (g) when none of those rules have been broken in your paragraph (a); so why scrap that and go over to (g)?"

Blackburn: "How do you know that—"

Thompson: "I don't think the members know. Nobody's been found guilty. I want you to clarify it for me. I don't see none of them that has been violated in that first paragraph. I don't see one of them that has been violated in one of those things in there."

Blackburn: "That's your opinion, Brother."

Bro. Krug: "I would like to know who ordered this local to be put under trustee."

Blackburn: "Who ordered the local put under trusteeship? The general president, L. M. Raftery."

\*　　\*　　\*　　\*　　\*　　\*　　\*

Bro. Reno: "I would like to ask, is it your opinion that the general president would place a local of this kind in trusteeship without first having a recommendation?"

Blackburn: "My opinion has nothing to do with the matter."

Reno: "Don't you think there was a recommendation made from some place, either the Joint Committee or you?"

[Unanswered.]

\*　　\*　　\*　　\*　　\*　　\*　　\*

Blackburn: "Is there anyone here that hasn't spoken? Five or six men have practically dominated the floor. I'm asking now because I want everybody to have the opportunity to speak. Is there anyone other than those who have spoken that wishes to have anything to say now? If there isn't, your meeting is adjourned."

It is true that King, the business agent, had some conception of the reason for the trusteeship. He read to the hearing some 24 charges which had been made against him by the joint committee and gave his answers to these charges. Certainly everyone was given full opportunity to express himself. It is clear, however, that the members of the local whose rights of self-government were, allegedly for their own best interests, being taken from them, had no information as to the reasons which had prompted the action of their general president or of the nature of the proof upon which he had acted. Not only had they no knowledge in this respect, their constant efforts to obtain information were consistently rebuffed.

Throughout the meeting it was reiterated by the hearing officer that no formal charges had been filed against the local or any officer or member. Appellant before us asserts that section 47 does not require the filing of charges as prerequisite to the imposition of a trusteeship. It is true that no such formal requirement is made. That section in effect provides, however, that as grounds for trusteeship certain conditions must exist within the determination of the general president; that such determination may not be an arbitrary one but must follow notice and hearing. Interested parties are, then, entitled to knowledge of the grounds for the trusteeship, and of the supporting evidence and an opportunity themselves to present evidence and to be heard with reference to such matters.

Notice and hearing were, then, insufficient within the contemplation of section 47(g).

Appellant assigns as error refusal of the trial court to admit testimony to the effect that the local has prospered under trusteeship. Such proof, even if admitted, could not alter the situation. No one has questioned the good faith of the general president, the general executive board or the trustee in acting as they have under a misconception of their rights and duties. No one has questioned the honesty or efficiency of the trustee's administration. The essential fact remains that the right of the local to enjoy self-government was not taken from it in accordance either with the provisions of its constitution or with our traditional concepts of due process.

It follows that under section 47, continuation of the trusteeship beyond the period of ten days after appointment of the trustee was improper and without authority. Under that section the members of the local then possessed a right to restoration of control of their local.

We are next confronted with the question whether this is a right which is entitled to judicial protection. Courts will not, in the ordinary case, interfere with the internal affairs of voluntary associations. See 7 C.J.S. 79, Associations, sec. 34; 4 Am.Jur. 466, Associations and Clubs, sec. 17. In Dusing v. Nuzzo, 178 Misc. 965, 37 N.Y.S.2d 750, 752, the principle, as applied to labor unions, is well stated as follows:

"The boundaries of the judicial power over labor unions ought to be plainly stated. Where the management in control of a labor union refuses to obey the laws of the union requiring that elections be held, or where it arbitrarily expels members from the union roster in violation of union law, or where it dissipates union funds without accounting, and where redress for any of these irregularities cannot be obtained through constituted local or international officials, the court will intervene to grant relief. The ground of judicial intervention is that in these circumstances necessity impels the court to act in relief of union members unable to

relieve themselves of abuses of power. The necessity is imperative because in modern industry the economic existence of union labor is dependent upon a union leadership responsive to the needs and direction of the union membership.

"But the courts cannot undertake to run the labor unions in detail or to interpret their laws upon every point of internal controversy. If the judicial power were exercised in this scope it would have an unfortunate consequence upon the independence and the vitality of labor unions. Experience in responsible self-government is essential to the success of union labor in protecting its economic welfare. This in turn depends upon its independence and the courts should intervene only in cases of grave necessity." See also: Chafee, The Internal Affairs of Associations, 43 Harvard Law Review 993; Anno. 21 A.L.R.2d, 397.

Appellant emphasizes that the action of the general president was not that of expulsion from membership or revocation of charter; that the action taken cannot operate to deprive a member of his right to secure employment in the industry or to participate in welfare benefits. Cf. Johnson v. Brotherhood of Carpenters and Joiners of America, Local Union No. 971, 52 Nev. 400, 288 P. 170.

Still a local's right of self-government carries with it for each of its members his right as a member and in such manner as may be prescribed to participate in determinations and agreements directly affecting his livelihood and the terms and conditions under which he is bound to labor. The right to participate in such determinations is related to the right of freedom itself and is such a right as a free country will not permit to be taken from one without his assent. Furthermore, since the economy of his community may be affected by such agreements, a member's participation in their negotiation and determination relates to his responsibility as a

citizen. The right of local self-government in such an association as this, then, is one in which the public has interest. There can be little doubt that it is a right which merits protection by judicial intervention.

Accepting that the right herein involved is entitled to judicial protection appellant contends that this suit was prematurely brought for the reason that at the time of its commencement respondents had not exhausted their remedies within the framework provided by the union constitution.

The constitution, sec. 44(f) provides for appeal to the general executive board from decisions of the general president and from his orders to a subordinate body or its officers and members.

The action before us was commenced June 26, 1953. On September 4, 1953 the general president ordered continuance of the trusteeship upon the basis of the hearing of June 10, 1953. An appeal from this order was taken to the general executive board. On December 11, 1953 the decision of the general executive board was announced as follows: "Dear Sir and Brother: Protest No. 114384 of Brother James King of Local Union 159, Las Vegas, Nevada, against the decision of General President L. M. Raftery that the Special Trusteeship of Local Union 159 be continued has been submitted to the General Executive Board. I have been instructed to notify Brother James King that the protest is not sustained."

At the time of commencement of this action, then, the meeting with reference to continuation of the trusteeship had been held but no order for continuance had been made by the general president nor had the general executive board acted upon review.

With respect to internal union controversies it is universally recognized as the general rule that remedies within the organization must be exhausted before resort is had to the courts. See 7 C.J.S. 81, Associations, sec.

34b. The rule is based, among others, upon the principles: (1) that the constitution amounts to a binding agreement between the union and its members with respect to such procedures, with which agreement the courts should not interfere; (2) that until such remedies are exhausted no showing of need for judicial relief has been made and that courts should not be encumbered with such internal controversies until it has been established that they cannot be resolved through the established procedures of the organization. Killeen v. Hotel & Restaurant Employees International Alliance, 84 Cal. App.2d 87, 190 P.2d 30.

The rule is subject to exceptions reflecting largely the principles upon which it is based and is to be given a reasonable and common sense application to the facts of each case. As stated in Local Union No. 57, Brotherhood of Painters, Decorators and Paperhangers of America v. Boyd, 245 Ala. 227, 16 So.2d 705, 712, "But this rule is not without its exceptions, based upon reason and common sense. If requiring exhaustion of internal remedies would, under the circumstances, be unreasonable and a practical denial of justice, or if it is clear that exhausting its internal remedies would be a vain and useless undertaking, such a course is not a condition precedent to equitable relief." Accord: Johnson v. Brotherhood, supra; Bianco v. Eisen, 190 Misc. 609, 75 N.Y.S. 2d 914.

In the instant case, by taking hold of the controversy the courts cannot be said to have countenanced a violation of the sanctity of contract or to have interfered with the contractual rights of the parties. The local has, without success, followed the agreed procedure and has demonstrated the futility of its attempts to secure relief thereby. Should this suit be dismissed as prematurely brought, it would promptly and properly be brought anew and the courts would be doubly encumbered with

the identical controversy. The reasons for the rule do not here exist and under the facts of this case it is reduced to mere technicality.

We are left with the proposition, which we cannot in good sense or justice ignore, that upon the merits of the controversy this is a proper resort to the courts for relief by union members otherwise unable to relieve themselves.

Appellant contends that the local has not yet exhausted its remedies of review under its constitution. It is pointed out that section 293 provides, "Appeals from the General Executive Board shall be taken to the General Convention." Such an appeal has not here been taken. This section, however, has no relation to appeals from acts of the general president but deals with appeals from decisions of local unions, district councils and other subordinate bodies.

Affirmed with costs.

BADT and EATHER, JJ., concur.