**H. B. TORBETT, Appellee,**

v.

**INTERNATIONAL TYPOGRAPHICAL UNION, Appellant.**

**No. 45136.**

Supreme Court of Oklahoma.

March 20, 1973.

James S. Steph, Okmulgee, for appellee.

Ungerman, Grabel, Ungerman & Leiter, Tulsa, for appellant.

DAVISON, Chief Justice:

The International Typographical Union (the Union), through its Executive Council, rejected H. B. Torbett's (the member's) application for pension benefits. Upon rejection, the member (then 72 years of age) commenced an action against the Union, alleging his dues paying membership in the Union continuously for over 50 years during which time he paid into the Union sums of money designated by the Union as Old Age Pension Benefits. The payments were allegedly made in accordance with terms, rules and regulations of the Union as set forth in "The Book of Laws" of the Union. The member alleged further that he was entitled under "The Book of Laws" to receive pension benefits of $100.00 per month by virtue of his having attained the age of 60 years with 25 years of continuous membership immediately preceding the time (March 1969) of application for pension benefits.

The member, asserting the Union rejected his application for pension benefits without just cause, prayed that the trial court order the Union to pay the member the claimed pension benefits or, in the alternative, to pay the member $9900.00, which sum is the aggregate amount paid by the member to the Union, with interest thereon for the period of each payment with the costs of this action.

The Union in its answer plead: I, that the trial court lacked jurisdiction over the Union; II, a denial of the allegations of the member's petition; III, that the member has failed to exhaust his administrative remedies by appealing to the Union's International Convention from the Executive Council's rejection of the member's application; and IV, that the member's suspension on July 10, 1969 from membership of a local union for non-payment of dues precluded the member's continuous membership for at least 25 years immediately preceding the time of application for pension benefits. Additionally, the member is not unable to continue in or secure sustaining employment because of age or disability.

On the basis of the foregoing, the Union prayed that the member take nothing.

■ We must first consider the member's assertion that the Union did not perfect its appeal due to its failure to file its petition-in-error in this court within thirty days from the final judgment or final order. 12 O.S.1961, § 990 (Supp. 1969) and Rules of Appellate Procedure in Civil Cases, Rule 1.15. Rule 1.11 provides in part: ". . . . if the case is tried to the court, judgment is deemed rendered when its terms are completely pronounced by the judge and clearly resolve all the issues in controversy."

The trial court's judgment rendered January 25, 1971 found, among other things, that the said International Typographical Union must pay the old age pension to plaintiff herein unless it can show that plaintiff's earnings as operator of Torbett Printing Shop are in excess of those permitted by Art. II § 3 of the International Typographical Union By Laws.

The last paragraph of the Journal Entry of Judgment declares: "The Court therefor retains jurisdiction of this case for the purpose of hearing evidence pertaining to the earnings of the said printing Company." Presumably after hearing evidence the trial court in its order of July 26, 1971 found that plaintiff's earnings were not in excess of those permitted by Art. II, § 3 of Defendant's By-Laws, computed on the Tulsa scale of the daily earning rate. Although making such findings was all that the trial court retained jurisdiction to do in its judgment of January 25, 1971, nevertheless, the trial court, recognizing a condition precedent to the finality of the judgment that had not been made a condition of the judgment of January 25, 1971, found and ordered "that and [a] good part of the problem in this case was created by the plaintiff's failure to pay his union dues figured on the Tulsa scale. It is therefore the order of this court that the plaintiff shall not receive pension payment past or current unless and until he pays his union dues up to date plus any applicable penal-

ties for late payment and pays the courts costs of this action." Since the trial court that rendered the judgment of January 25, 1971 recognized by its order of July 26, 1971, that the terms of the judgment of January 25, 1971 were not completely pronounced as provided in Rule 1.11, the order of July 26, 1971 was the final judgment. The Petition in Error was therefore timely filed on August 20, 1971.

The Union urges first, that the trial court erred in overruling its motion to quash couched in the generality that the summons directed to the Union was not issued, served and returned according to law.

■ The Union was purportedly served by serving one R. V. Longwith, a resident of Okmulgee County, as the Union's agent for service. The motion to quash was accompanied by an affidavit of Vester J. Furr, Business Agent of International Typographical Union Local No. 403. Longwith, at the time of service, was a member of the Union receiving pension benefits from the Union. Furr's affidavit did not state that Longwith was not a member of the Union but stated he "is no longer an active member." Although not raised specifically by the motion to quash, the Union now argues that the service was defective additionally because it was not established that the Union was an association that transacted "business for gain or speculation under a particular appellation, not being incorporated."

These contentions call for the application of 12 O.S.1961, § 182, which provides in part: "When two or more persons associate themselves together and transact business for gain or speculation under a particular appellation, not being incorporated, they may be sued by such appellation without naming the individuals composing such association and service of process may be had upon such association by personal service as provided by law for services of summons in civil actions, upon any member of such unincorporated association. . . . ."

Longwith, although at the time of service of process was receiving pension benefits and was not an active member of any local of the Union remains a member of the Union in every real sense. He is subject to the Union's Constitution and valid By-Laws as well as valid legislative enactments of an International Convention. The Union exercises surveillance over his conduct; the Executive Council of the Union can suspend or discontinue his benefits (Union's By-Laws, Art. XX, § 9); this pension of $100.00 is not paid for a particular four weeks if his personal earnings for that four weeks exceed a certain sum. (Union's By-Laws, Art. XX, § 3). The applicable language of 12 O.S.1961, § 182, quoted above, requires service on a member of the Union. The clear import of Furr's affidavit is that Longwith is a member of the Union.

■■ The Union's additional challenge to the service of summons, invoking the language of § 182, is that no showing was made that the Union transacted business for gain or speculation. As indicated the motion to quash was general. No reference to this point was made in the motion to quash or in Furr's affidavit. A motion to quash of this general nature only suggests the invalidity of service that appears on the face of the summons or the return. In Rose v. Walker, Okl., 380 P.2d 702, we said:

"A simple allegation that a summons was not issued served and returned according to law, generally speaking, is in the nature of a demurrer to the summons and puts in issue only those defects which appear upon the face of the summons and the service and return thereof."

The duty of counsel in preparing a motion to quash to be specific in questioning the validity of process and its service was considered at length in Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1. We there said:

"An examination of the special appearance and motion to quash does not

in any manner direct the court's attention to any fact or circumstance which shows that counsel for defendant was relying on the question of venue."

In alluding in Ada to the duty of counsel to be specific, we quoted the following from the Court of Appeals for the Eighth Circuit in Bankers' Surety Co. v. Town of Holly, 219 F. 96, 101, wherein the defendant moved to quash the service of summons herein for the reason the same is not valid and authorized: "A motion to quash the service of process must distinctly point out the defects in the service, and nothing beyond the scope of the motion will be considered." In support of its pronouncement the Court of Appeals cited applicable cases from New York, Illinois, Nebraska and Vermont. The rule thus stated is surely applicable here where the Union supported its general motion to quash with an affidavit specifying an alleged error in service of process totally unrelated to the Union's additional point. On the basis of the foregoing, we hold that the service of process on the Union is not subject to attack.

The Executive Council of the Union rejected the member's application for pension benefits of $100.00 per month. The reason given by the Secretary-Treasurer of the Union for this rejection will be discussed later when we consider other assignments of error.

■ We now consider the Union's assignment that the member's resort to the courts is premature, that under the applicable rules of the Union, he must first appeal the Executive Council's rejection to the International Convention (held at Miami, Florida when the member's appeal would have been heard). A Union's arbitrary and capricious rejection of a pension application may bear upon the member's procedural obligation to exhaust his remedies within the Union. However, we need not consider that obligation here because we hold, that in view of the following, to require the member to appeal to the International Convention is tantamount to a practical denial of resort to the courts.

The member who is here applying to the Union for pension benefits is over 70 years of age, having been a member since 1918. The benefits are $100.00 per month. To prosecute an appeal sections 38, 39 and 42 of the Union's By-Laws require that the following expense must be incurred (1) all documents, evidence and arguments must be transmitted to the International Secretary-Treasurer within 60 days after notice of appeal, (2) all appeals to a convention must be in printed form and only the briefs, documents and evidence upon which the decision of the Executive Council was based shall be presented to and considered by the committee on appeals, (3) *The appellant shall furnish to the Secretary-Treasurer on or before the day previous to the convention not less than 500 copies of the appeal to be distributed by the International Secretary-Treasurer to each delegate in attendance at the convention,* (Emphasis supplied) and (4), whether right or wrong, who seeks redress in the courts shall deposit with the Executive Council an approved bond sufficient to cover the cost entailed by the Union in defending the action. Several years pension would be exhausted in such an appeal to the International Convention.

Vester J. Furr, a witness for the Union who is the Business Agent for International Typographical Union, Local 403 of Tulsa, Oklahoma, gave the following answers to the stated questions in referring to the above requirements:

"Q. Can you tell us whether that would prohibit a person asking a Hundred ($100.00) a month pension?

"A. I'll say this anytime a man has a case he can sure pass the hat and the people will go along with it. I've seen it many, many times.

"Q. Would it be prohibitive to a person?

"A. In my circumstances, yes.

"Q. Asking a Hundred ($100.00) Dollars a month?

"A. In my circumstances, yes.

"Q. In your circumstances, yes, is that correct?

"A. Yes."

On the basis of the foregoing we hold that to require this member under the facts of this case to exhaust his remedy before the International Convention would be a practical denial of justice. This is a well recognized exception to the rule. Hickman v. Kline, 71 Nev. 55, 279 P.2d 662, 669 [6, 7]. The Nevada Supreme Court quoted the Alabama Supreme Court with approval: "If requiring exhaustion of internal remedies would, under the circumstances, be unreasonable and a practical denial of justice . . . . such a course is not a condition precedent to equitable relief." Local Union No. 57, Brotherhood of Painters, Decorators and Paperhangers of America v. Boyd, 245 Ala. 227, 16 So.2d 705, 712. The denial of justice is accentuated by the arbitrary and capricious conduct of the Executive Council in rejecting the member's application. We may assume with the Union that in this case the trial court's jurisdiction to review a decision of the Executive Council is limited to a determination of whether or not the Council's finding was arbitrary, capricious, or an abuse of discretion. Allen v. Southern Pac. Co., 166 Or. 290, 110 P.2d 933, 937 [7]. But here, as found by the trial court, the action of the Executive Council was arbitrary and capricious.

■ In informing the member that his application for pension benefits were denied, the Secretary-Treasurer of the International Typographical Union on May 1, 1969 wrote the Secretary of the Okmulgee Local No. 499: "The application for the I.T.U. Old Age Pension submitted by the above member [Harry Byron Torbett] was referred to the Executive Council and was disapproved." In response to the member's request for the Executive Council's reason for rejecting his application, the Secretary-Treasurer of the Union on May 29, 1969, wrote to the member: " . . . .

a proprietor member must dispose of his business to some person other than his wife before he can be eligible to apply for the pension. Therefore, since your wife is the owner of the business the same rule would apply and you would not be eligible to apply for the pension so long as your wife owns the business."

This finding was purely arbitrary—a violation of the legal rights of the member that are secured by Art. XX, § 3, of the Union's By-Laws. Had the Torbett Printing Company been owned by the member, such ownership would have been permitted by Art. XX, § 3, of the Union's By-Laws. This section provides:

"Pensioners may engage in a pursuit inside or outside the trade, but shall not be eligible for the pension in any four-week pension period that money received as wages shall exceed the sum equivalent to eight shifts' pay at the scale of the union with which pensioner is affiliated, or in any five-week pension period that money received as wages shall exceed the sum equivalent to ten shifts' pay at the scale of the union with which pensioner is affiliated."

This section of the Union's By-Laws was obviously written upon the stark premise that pensioners may engage in pursuit inside or outside the trade. The arbitrary nature of the Executive Council's action lay in its decision, contrary to Art. XX, § 3, that the member seeking a pension may not engage in a pursuit inside the trade. This action was an attempted denial of the member's legal rights.

■ We turn now to the Union's attack on the final order of July 26, 1971, wherein the trial court found "that the daily earning rate should be figured on the Tulsa scale for each of the years [1969, 1971, 1972] involved in this litigation." In this same order the trial court decreed that "plaintiff [the member] shall not receive pension payment past or current unless and until he pays his union dues up to date, plus any applicable penalties for late payment and pays the court costs of this action."

It was in March, 1969, with Union dues paid up, that the member filed his application for pension benefits, after his application had been approved by Local Union No. 499 of Okmulgee. We have already referred to the arbitrary and capricious treatment the member's application received at the hands of the Executive Council of the International Typographical Union.

For reasons satisfactory to the Union the charter of the Okmulgee Local was lifted shortly after the member's application for pension benefits was filed with the Executive Council. The Executive Council, prior to May 29, 1969 authorized the extension of the jurisdiction of Tulsa Typographical Union No. 403 to include Okmulgee. By this extension of jurisdiction, the former members of the Okmulgee Local became affiliated with the Tulsa Local. Much confusion ensued concerning the proper payment of dues by the former members of the Okmulgee Local Union, which confusion still prevailed on September 3, 1969, the date this action was filed to enforce the payment of pension benefits. The proper payment of dues, including the applicable wage scales, thus necessarily became an issue in this action.

This extension of the jurisdiction of the Tulsa Local to the members of the defunct Okmulgee Local made the members of the defunct Okmulgee Local subject to the rules and regulations of the Tulsa Local. Accordingly, the trial court in its final order of July 26, 1971, found: "that the plaintiff's earnings did not exceed the allowed two days pay per week and that therefore the plaintiff is entitled to receive pension benefits for the years 1969, 1970, and 1971, unless and until it appears that his annual earnings will exceed the equivalent of two days pay based on the current scale in Tulsa."

Since the Tulsa Local has had jurisdiction over the Okmulgee members since April or May, 1969, it would have permitted purely arbitrary action on the part of the Union to have failed to reach the judgment the trial court reached. This judgment followed the requirements of Art. IX, Sec. 10 of the Union's By-Laws which say: "No member of a subordinate union shall be allowed to pay dues in the jurisdiction of one union while working under that of another; and no subordinate shall receive dues as aforesaid. Dues of right belong to the union under whose jurisdiction the party is working." The Trial Court was burdened with the obligation to preclude arbitrary action on the part of the Union because of the Union's insistence that the Okmulgee Local Union's rules and wage scales, and dues apply after its members had become subject to the jurisdiction of the Tulsa Local. Taxicab Drivers' Local Union No. 889 v. Pittman, Okl., 322 P.2d 159, 165 [7, 8]; Farowitz v. Associated Musicians of Greater New York, C.A.2d Circuit, 330 F.2d 999, 1002 [2].

Affirmed.

WILLIAMS, V. C. J. and IRWIN, BERRY, HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.